IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERT COOPER,** | * | |
| **Plaintiff,** | * | |
| v. | * | Civ. No. DLB-22-1189 |
| **ROBERT GREEN,** *et al.*, | * | |
| **Defendants.** | * | |

## **MEMORANDUM**

Self-represented plaintiff and state prisoner Robert Cooper alleges that he was attacked by another inmate after he advised correctional staff that he had been threatened by that inmate and that the failure to protect him from harm violated his rights under the Eighth Amendment. ECF 1. He filed this civil rights action pursuant to 42 U.S.C. § 1983 against Maryland Department of Public Safety and Correctional Services Secretary Robert Green, Division of Correction Commissioner J.P. Morgan, Warden Christopher Smith, Lieutenant Melody Scott, and Officer David Abiodun.

On June 22, 2023, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. ECF 40. Cooper opposes the motion. ECF 44. The defendants replied (ECF 47), and Cooper filed an unauthorized surreply (ECF 48), which defendants move to strike (ECF 50). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The motion to strike is granted.[1]

---

[1] Unless otherwise ordered, a surreply is not permitted. *See* Loc. R. 105.2(a) (D. Md. 2023). A surreply is appropriate when a party raises an issue for the first time in a reply and the opposing party wants to respond. *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 315 (D. Md. 2014); *see also De Simone v. VSL Pharm., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022). The defendants have not raised any matters for the first time in their reply; therefore, their motion to strike the surreply is granted.

The defendants' dispositive motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted.[2]

## I. Background

At Maryland Correctional Institution Jessup ("MCIJ"), dormitories L2 and L3 are open areas with rows of beds. ECF 40-4, ¶ 3; ECF 40-7, ¶¶ 4, 9 and at 5–8. In the space around their beds, inmates can have personal items like televisions and radios. ECF 40-4, ¶ 3; ECF 40-7, ¶ 4. Most inmates who are assigned to L2 or L3 are over 50 years old and/or have medical issues. ECF 40-4, ¶ 3; ECF 40-6, ¶ 4; ECF 40-7, ¶ 4. Additionally, they "are not inclined to violence against other inmates," and they "want to focus on finishing their sentences without difficulties or disputes with other inmates." ECF 40-4, ¶ 3; *see* ECF 40-6, ¶ 4; ECF 40-7, ¶ 4. "Housing in the dormitory areas is considered a privilege and dormitory inmates generally are on their best behavior to preserve that privilege." ECF 40-6, ¶ 4.

On March 30, 2021, Cooper, who was incarcerated at MCIJ, was assigned to dormitory L3. ECF 40-3, at 8. On April 15, 2021, Francisco George was assigned to a bed next to Cooper. *Id*. at 9.

On May 28, 2021, or shortly before then, George woke Cooper and told him that he kicked in his sleep and almost knocked George's television on the floor. ECF 1, at 9 (verified compl.). George told Cooper that if it happened again, they were "going to have a problem." *Id*.

---

[2] The defendants also filed a motion for reconsideration of the Order granting Cooper in forma pauperis status, arguing that Cooper has acquired "three strikes" from the dismissal of prior cases for failure to state a claim and, in accordance with 28 U.S.C. § 1915(g), he may not proceed without paying the filing fee. ECF 43. However, in four of the five prior cases the defendants cite, the cases were not dismissed for failure to state a claim; summary judgment was granted in favor of some defendants. *See Cooper v. Brinegar, et al.*, Civ. No. JFM-14-1291 (ECF 19, at 18); *Cooper v. Sowers, et al.*, Civ. No. JFM-13-3872 (ECF 44, at 12); *Cooper v. Corr. Med. Servs., et al.*, Civ. No. JFM 11-1617 (ECF 15, at 8–10); *Cooper v. Johnson, et al.*, Civ. No. AMD-06-286 (ECF 43, at 9–10). The motion is denied.

At the time, Abiodun was the officer in charge of the L2/L3 dormitory. ECF 40-4, ¶ 5. Cooper told Abiodun that George's television was near Cooper's bed and that George told Cooper that if he knocked over his television, there would be a problem. *Id.*; ECF 40-4, ¶ 5. Cooper recalls the conversation with Abiodun occurred two days after George's threat; Abiodun recalls it happened the same day. ECF 1, at 9; ECF 40-4, ¶ 5. Abiodun denies that Cooper reported that George threatened him with violence, and based on their conversation, Abiodun did not believe there was a threat of violence or risk of a fight. ECF 40-4, ¶ 5. Nevertheless, Abiodun said he would report the information to his supervisor, ECF 1, at 9, and later that night, Abiodun told Lt. Scott about his conversation with Cooper. ECF 40-4, ¶¶ 6, 7.

Scott spoke to George and Cooper separately on May 28. ECF 1, at 9–10; ECF 40-5, ¶¶ 6,7; ECF 40-4, ¶ 7. Scott states she asked George if he was happy with his bed assignment or wanted to move to another available bed. ECF 40-5, ¶¶ 6–7. Scott says she did not tell George that she was aware of any issue between him and Cooper. *Id.* George told Scott that he was concerned Cooper would knock over his property, but he did not want to move. ECF 40-5, ¶ 6. George was calm and did not seem angry at Cooper. *Id.* Scott then asked Cooper if he wanted a new bed assignment, and Cooper said yes. *Id.* ¶ 7; ECF 1, at 10. Scott says Cooper, like George, was calm, and he did not tell her he was worried about his safety. ECF 40-5, ¶ 7. Abiodun observed Scott's conversations with George and Scott from a distance and did not see any agitation. ECF 40-4, ¶ 7.

That same day, in the dayroom, George called Cooper a "rat and snitch" and stabbed or hit him repeatedly. ECF 1, at 10; *see* ECF 40-3, at 21, 29. According to George, he was prompted to call Cooper a "rat" when he learned that Cooper "had the Lt and a tier officer come to [George's] bunk about an incident that even wasn't that big of a deal." ECF 40-3, at 29. Abiodun could not

3

see the room from his desk, but he heard a commotion and saw Cooper emerge from the dayroom bleeding. ECF 40-4, ¶ 5; ECF 40-7, ¶ 9 and at 7. Abiodun reported the fight and requested back up officers. ECF 40-4, ¶ 8; ECF 40-3, at 15–17, 25. Both Cooper and George were escorted for medical attention. ECF 40-3, at 20–23. Cooper was taken to the hospital where he received treatment for fractures in his fingers and nose, as well as for what appeared to be stab wounds to his eye, hand, and head. ECF 1, at 10; ECF 40-3, at 21. MCIJ's intelligence department ("Intel") and the Department of Public Safety and Correctional Services' ("DPSCS") Intelligence and Investigative Division ("IID") were notified of the incident. ECF 40-6, ¶ 2; ECF 40-7, ¶ 2; ECF 40-9.

MCIJ Intel Officers Harrison and Kranich interviewed dozens of inmates, all of whom identified Cooper as the aggressor. ECF 40-6, ¶¶ 7, 8; ECF 40-7, ¶¶ 6–8. At least 10 of them said they saw the altercation begin with a verbal argument that Cooper initiated in the bunk area and progress to the point where Cooper raised his cane to strike George, George grabbed the cane from Cooper, and George struck Cooper with it. ECF 40-6, ¶¶ 7, 8; ECF 40-7, ¶¶ 6–8. Cooper refused to provide a written statement during MCIJ's investigation. ECF 40-3, at 30. George reported he called Cooper a "rat" for telling staff about "an incident that even wasn't that big of a deal," which prompted Cooper to swing his cane at George. *Id*. at 29. George stated he "grabbed [the cane] away from [Cooper] and struck him with it." *Id.*

IID investigator Nwanja concluded that there was no probable cause to support Cooper's allegations that George was the aggressor in the altercation. ECF 40-9, at 8. Although Cooper reported to Nwanja that George stabbed him with a knife, IID did not find any evidence of a weapon, other than the cane, used in the altercation. *Id.* at 7, 14, 22. When interviewed, Cooper told Nwanja that George threatened him both "in his dream and in person." *Id*. at 7.

4

Abiodun, Scott, Harrison, and CO II Kranich each asserts that, before the altercation, Cooper did not complain that George threatened his safety and that they were not aware that George posed a danger to Cooper.  ECF 40-4, ¶¶ 5, 10; ECF 40-5, ¶¶ 6, 7, 9; ECF 40-6, ¶¶ 2, 9; ECF 40-7, ¶¶ 2, 11.

Cooper invoked the administrative remedy procedure process (ARP) complaining that the officers failed to prevent the May 28, 2021 altercation.  ECF 1, at 11, ¶ 15; ECF 40-8, ¶ 3 and at 12–13.  In the ARP, he did not complain about his dormitory housing assignment or unsafe conditions within the dormitory.  ECF 40-8.

In this lawsuit, he alleges that, by providing "unsafe conditions" and failing to protect him from being assaulted by George, the officers violated his "Eighth Amendment rights, the Maryland Declaration of Rights and the Department of Public Safety and Correctional Services rules, regulations, policies, procedures and directives."  ECF 1, at 11.

## II.     Standard of Review

The defendants move to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment.  ECF 40, at 1.  They also argue that the claims against the defendants in their official capacity are barred by Eleventh Amendment immunity.  *See* ECF 40-1, at 8.  This is a jurisdictional issue.  *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) ("Eleventh Amendment immunity presents a jurisdictional question that may bar a suit from advancing to the merits" unless there is an "unequivocal expression of consent from a state" (internal citation omitted).  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (holding Eleventh Amendment immunity is "an immunity from suit rather than a mere defense to liability").

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis*

*v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.* Where, as here, the defendants contest subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]" *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted). Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus*

*Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S.*

*Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Cooper that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 41. Moreover, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Cooper to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). The Court is satisfied that Cooper has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion, in part, under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8

Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position.  Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251.  The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

**III.    Analysis**

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights

9

elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).[3]

### A. Official Capacity Claims

The defendants assert that, under the Eleventh Amendment, they are immune from claims against them in their official capacity. "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

In addition to consent, there are two other exceptions to Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). The first exception, abrogation by Congress, does not apply here. Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will*, 491

---

[3] Insofar as Cooper alleges the defendants violated "the Maryland Declaration of Rights and the Department of Public Safety and Correctional Services rules, regulations, policies, procedures and directives," ECF 1, at 11, these are not constitutional provisions or federal laws. Therefore, these alleged violations cannot form the basis for § 1983 liability unless they also amount to violations of constitutional rights.

10

U.S. at 66. The second exception does apply insofar as Cooper seeks prospective injunctive relief. *See, e.g.*, ECF 1, at 12–13 (requesting, among other things, the installation of security cameras in the dormitories and surrounding areas; implementation of "strict" criteria for being housed in the dormitories; elimination of the dormitories; retraining of staff; transfer; assignment to a single cell; and assistance with filing criminal charges against George).

Cooper's claims for damages against the defendants in their official capacity are barred by the Eleventh Amendment and are dismissed without prejudice for lack of subject matter jurisdiction. The Eleventh Amendment does not bar his claims for injunctive relief against the defendants in their official capacity.

**B.  Personal Participation: Green, Morgan, and Smith**

Cooper names as defendants Secretary Green, Commissioner Morgan, and Warden Smith. The Court will address the unspecified § 1983 claims against these defendants under the Rule 12(b)(6) standard.

A defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. An official like these defendants may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

To state a claim for supervisor liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed

11

"deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Cooper has not alleged that former Secretary Green, Commissioner Morgan, or Warden Smith personally participated in the alleged constitutional violations. Cooper simply lists them as defendants without providing any specific allegations against them. To the extent Cooper seeks monetary damages from these defendants based on an allegation of supervisory liability, his claims fail because he has not alleged that any of their subordinates was responsible for the alleged unconstitutional conduct or that they were aware of a subordinate's conduct that "posed a pervasive and unreasonable risk of constitutional injury" and failed to respond adequately. *See id.* Accordingly, Cooper's claims against Green, Morgan, and Smith are dismissed without prejudice.

**C.  Failure to Protect: Lt. Scott and Abiodun**

Cooper alleges Scott and Abiodun failed to protect him in violation of his Eighth Amendment rights. The Court will address this § 1983 claim against these defendants under the Rule 56 standard.

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

12

"Prison officials violate the Eighth Amendment's cruel-and-unusual-punishment clause when they are deliberately indifferent to a substantial risk to an inmate's safety . . . ." *King v. Riley*, 76 F.4th 259, 264 (4th Cir. 2023) (citing *Farmer*, 511 U.S. 825; *Estelle*, 429 U.S. 97). To prevail on a failure-to-protect claim, the prisoner must establish an objective and a subjective element. *Id.* First, he must show an objectively "substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). Second, the prisoner must show that the defendant "subjectively recognized a substantial risk of harm" and "subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish*, 372 F.3d at 303) (emphasis in *Anderson* removed). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A prison official who knew of a risk and "'responded reasonably to the risk' cannot be found liable under the Eighth Amendment." *King*, 76 F.4th at 264 (quoting *Farmer*, 511 U.S. at 844).

The subjective inquiry requires a showing of deliberate indifference, which is "a very high standard" that requires more than "a showing of mere negligence." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The Supreme Court delineated the difference between tort liability and liability for a constitutional violation:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.

13

> The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See Prosser and Keeton* §§ 2, 34, pp. 6, 213–214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; *United States v. Muniz*, 374 U.S. 150 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–38.

The Court will assume without deciding that Cooper has produced some evidence to show an objectively substantial risk of serious harm that George would harm Cooper if Cooper touched his bedside property. Cooper has not, however, offered any evidence to satisfy the subjective prong. There is no evidence that Scott or Abiodun was deliberately indifferent to that risk of harm. Start with Abiodun. He reported to Scott, his supervisor, that Cooper told him that George's television was near Cooper's bed and that George told Cooper that if he knocked over his television, there would be a problem. This up-the-chain report of a disagreement between two inmates was reasonable under the circumstances, and Cooper does not offer any evidence it was unreasonable. Scott, in turn, interviewed Cooper and George separately and observed they were calm. During Scott's interviews, George did not threaten to harm Cooper, and Cooper did not tell Scott he feared George would harm him. To prevent any future disagreements over Cooper kicking George's television during his sleep, Scott offered to move Cooper to a different bed, which Cooper accepted. Scott, like Abiodun, responded reasonably to the information she was provided. Soon thereafter, Cooper instigated a physical altercation with George after George called him a "rat." In response, George struck Cooper with Cooper's cane. The risk that George would harm Cooper after Cooper instigated a fight was not known to Scott or Abiodun. There is no genuine dispute that Scott and Abiodun responded reasonably to the risk they knew about and did not subjectively recognize that their actions were inappropriate in light of a substantial risk of harm. Scott and Abiodun's motion for summary judgment on the failure-to-protect claim is granted.

### D. Conditions in the Dormitory

To the extent Cooper claims that his assignment to dormitory housing exposed him to "unsafe conditions" in violation of his Eighth Amendment rights, the claim must be dismissed for failure to exhaust administrative remedies.

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this Court will hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Consequently, if Cooper has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S. Ct. at 1857.

An administrative remedy procedure process applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.* A prisoner seeking redress for a rights violation must follow that process, beginning with filing an ARP request with the prison's managing official. Md. Code Ann., Corr. Servs. § 10-206(b); COMAR 12.07.01.04; *see Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006) (to exhaust administrative remedies, a prisoner must complete "the administrative review process in accordance with the applicable procedural rules"). If his ARP request is dismissed, he can challenge the decision by filing an appeal with the Commissioner of Corrections. COMAR 12.07.01.05C. If he is dissatisfied with the result when he completes that procedure, he may file a grievance with the Inmate Grievance Office ("IGO"). Corr. Servs. §§ 10-206(a), 10-

15

210; COMAR 12.07.01.03, 05B.  The IGO may refer the complaint to an administrative law judge ("ALJ") for a hearing or dismiss it without a hearing if it is "wholly lacking in merit on its face." Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08.  If the IGO dismisses the complaint, its dismissal serves as a final agency determination.  Corr. Servs. §§ 10-207(b)(1).  If the complaint is referred to an ALJ, the ALJ provides a proposed decision to the Secretary of Department of Public Safety and Correctional Services.  *See* Corr. Servs. § 10-209(b)–(c).  The Secretary, in turn, makes a final agency determination.  *See id.*

Cooper failed to exhaust administrative remedies as to any claim regarding the conditions of the dormitory or his assignment to the dormitory.  In his ARP regarding the altercation with George, Cooper did not complain about his assignment to dormitory housing or file a separate ARP asserting grievances regarding the conditions of dormitory housing.  Accordingly, Cooper's claim about his assignment and confinement in dormitory housing is dismissed for failure to exhaust administrative remedies.

### E.  Preliminary Injunctive Relief

Cooper's request for preliminary injunctive relief is denied.  *See* ECF 1, at 12–13.  A party seeking a preliminary injunction or temporary restraining order must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  For the reasons discussed above, Cooper has failed to demonstrate a likelihood of success on the merits.  Therefore, his request for injunctive relief is denied.

## IV. Conclusion

The defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted. The complaint is dismissed without prejudice as to the official capacity claims for damages against all defendants and the individual capacity claims asserted against Green, Morgan, and Smith. Cooper's claim based on his dormitory housing assignment exposing him to unsafe conditions is dismissed without prejudice for failure to exhaust administrative remedies. Summary judgment is granted in favor of Abiodun and Scott on the failure-to-protect claim. Cooper's request for preliminary injunctive relief is denied.[4] A separate order follows.

March 8, 2024
Date

Deborah L. Boardman
United States District Judge

---

[4] Having found no constitutional violation, the Court need not address the defendants' additional defenses and arguments.